B. Wheeler Dyer et al. [1] v. Commissioner. Dyer v. Commissioner
Docket No. 33179.[1]
United States Tax Court
1952 Tax Ct. Memo LEXIS 114; 11 T.C.M. (CCH) 858; T.C.M. (RIA) 52249; August 8, 1952
*114 Members of a partnership imported sugar syrup from Cuba in a joint venture with other persons in 1944. Wives and relatives of the partners and of one employee were offered interests in the speculation, which they accepted. The wives and relatives contributed no money or services nor did they provide security to cover any losses that might occur although they ostensibly assumed the risk of losses. They did not become partners. Profits were derived from the sale of the syrup as an unrationed sugar-containing product. Held: The partners and employee, rather than their wives and relatives, are taxable upon the partnership's share of the profits. Walter W. Walsh, Esq., and Brady O. Bryson, Esq., for the petitioners. Rigmor O. Carlsen, *115 Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax for the year 1944, as follows: Docket
Petitioner
No.
Deficiency
B. Wheeler Dyer
33179
$15,974.38
Ruth W. Dyer
33180
19,354.58
Benjamin W. Dyer, Jr.
33181
19,351.10
Daniel L. Dyer
33182
19,025.85
Leonard Francis Daidone
33183
6,339.43
William Harry Vanderveer
33184
3,249.57 The only issue presented, following the stipulation of some questions before the hearing and concession by respondent upon one issue after the hearing, is whether certain profits are taxable to petitioners or to other persons. Petitioner B. Wheeler Dyer's deficiency is no longer in issue, as respondent's concession has eliminated the questions pertaining to him. Findings of Fact The facts stipulated are found accordingly. B. W. Dyer & Company is a partnership (hereinafter referred to as the Partnership) engaged in business as sugar brokers and economists in New York, New York. The Partnership filed an income tax return on the cash receipts and disbursements basis for the calendar year 1944 with the collector of internal *116 revenue for the second district of New York. Petitioners B. Wheeler Dyer, Ruth W. Dyer, Benjamin W. Dyer, Jr., and Daniel L. Dyer were members of the Partnership. Benjamin W. Dyer, Jr. was in the Armed Services and during 1944, was stationed in the European theatre of operations. The partners each filed income tax returns for the calendar year 1944 on the cash receipts and disbursements basis with the collector of internal revenue for the second district of New York. Petitioner Leonard Francis Daidone became a limited partner of the Partnership in June, 1943. William Harry Vanderveer was an employee of the Partnership during 1944. The latter petitioners also filed income tax returns for the year 1944 on the cash receipts and disbursements basis with the collector of internal revenue for the second district of New York. On February 5, 1944, the Office of Price Administration issued a Revised Ration Order allowing the use of imported sugarcontaining products without the surrender of ration stamps or certificates if the products were in the United States and in the possession of or in transit to the user on May 1, 1944. On February 21, 1944, an agreement was entered into between one *117 A. I. Kaplan and the five members of the Partnership by which it was agreed that the parties, in a joint venture, would purchase sugar syrup in Cuba and import it into this country after flavoring it. The syrup would then be sold. The agreement provided that net profits or losses from the venture were to be divided 50 per cent to Kaplan and 50 per cent to the partners. The project was to be financed equally by the partners and Kaplan. The agreement also provided for "all risk" (including marine and war risk) insurance to be obtained by Kaplan on ocean transportation, as well as insurance against all risks, except deterioration while in storage in the United States. The insurance valuation was to be 80 cents per gallon and the Partnership and Kaplan were to be co-insured. Petitioner Daniel L. Dyer had resigned prior to February 1, 1943, from employment with the War Production Board, where he had served as an Assistant Administrator in the Sugar Branch. While employed in this capacity he had been loaned for a period of time by the War Production Board to the Office of Price Administration. He had become thoroughly familiar with the sugar and syrup policies of various Government Departments. *118 On March 1, 1944, an agreement was entered into between Refined Syrups & Sugars, Inc., as seller, and Kaplan and the partners, as buyers. The contract covered the purchase of approximately 675,000 gallons of Cuba invert sugar syrup at a price of $2.85 per 100 pounds of total sugar solids contained in the syrup. On or about March 3, 1944, letters were sent by B. W. Dyer & Company to Yvonne L. Dyer, wife of petitioner Daniel L. Dyer; Harriette W. Price, half sister of petitioner Ruth W. Dyer; Deborah S. Dyer, wife of petitioner Benjamin W. Dyer, Jr.; and Viola W. Hollriegel, an employee of the Partnership, offering each of them a 5 per cent interest in the venture. A 10 per cent interest was offered to Dorothy H. Daidone, wife of petitioner Leonard F. Daidone, and to Laura E. Vanderveer, wife of petitioner William H. Vanderveer. All of these offers were accepted. A. I. Kaplan had consented to this division of the Partnership's interest in the venture. The offers stated that the risks existed in the undertaking but that the Partnership would do all within its power to minimize the risks. The offers also stated that the Partnership sought to reduce its risks by offering interests in *119 the venture to others. None of the women read the agreements concerning the purchase of the syrup nor were they familiar with the details of the venture. No consideration was paid by the several women for the shares or interests assigned to them. Three of the women maintained trading accounts with the Partnership. The women who accepted interests in the undertaking discussed the venture with members of the Partnership and their families. Three of the women were also stockholders of the Dyer Sugar Corporation, through which the Partnership handled merchandise transactions. The officers and directors of this corporation were the members of the Partnership. On or about May 9, 1944, the Partnership mailed or delivered letters to Harriette W. Price, Deborah S. Dyer, Yvonne L. Dyer, Dorothy H. Daidone, Laura E. Vanderveer and Viola W. Hollriegel offering to distribute 90 per cent of the women's share of the profits realized. Each offer was accepted. The remaining 10 per cent retained by the Partnership was to be payment for the assumption of all outstanding risks by the Partnership. None of the aforementioned women rendered any services to the venture nor did they contribute money *120 or pledge any assets as security for their participation in any losses that might have occurred. They understood that they took a risk in accepting the interests. The women had personal assets and joint and individual bank accounts sufficient to cover estimated losses of $5,000. Except for joint bank accounts with her husband, Laura E. Vanderveen possessed only personal property, such as clothing and jewelry. The wives and half sister of the petitioners did not share with the petitioners the profits distributed to them. At the time of the agreement of February 21, 1944, an offer to sell the syrup to the Pepsi-Cola Company was being considered. This proposed sale was not consummated but agreements were reached in March, 1944, to sell 350,000 gallons of vanillin flavored sugar syrup to the General Foods Corporation through the Dyer Sugar Corporation. Under the terms of the agreement the seller was not to be liable if the syrup failed to arrive by reason of act of God, war conditions, government, state or municipality regulation or action, embargo, fire, flood, accident or strike or transportation difficulty or any cause beyond the seller's control. Other similar agreements were entered *121 into to sell 65,000 gallons of syrup to the Hoffman Beverage Company, 75,000 gallons to the Charles E. Hires Company, and 15,000 gallons to the Galler Beverages, Inc. All of the sugar syrup arrived in New York on April 18, 1944, and was sold forthwith as an unrationed sugar product. The venture was closed out on the books of the Partnership showing a total profit of $186,875.05. Profits were distributed on May 14, 1944, as follows: Dorothy H. Daidone
$9,075.11
Laura E. Vanderveer
9,075.11
Yvonne L. Dyer
4,537.56
Deborah S. Dyer
4,537.56
Harriette W. Price
4,537.56
Viola W. Hollriegel
4,537.56
Each of the aforementioned persons reported the specified amounts upon her individual income tax return for 1944. The respondent allocated the income received by these persons, as follows: Dorothy H. Daidone, to her husband, Leonard F. Daidone; Laura E. Vanderveer, to her husband, William H. Vanderveer; Deborah S. Dyer, to her husband, Benjamin W. Dyer, Jr.; Yvonne L. Dyer, to her husband, Daniel L. Dyer; Harriette W. Price, to her half sister, Ruth W. Dyer. The share of the profits distributed to Viola W. Hollriegel was not allocated to any one else *122 and is not in issue in these proceedings. Opinion VAN FOSSAN, Judge: The sole question to be determined, following the stipulation and concession of other issues, is whether the petitioners should be taxed upon the shares of profits derived from the venture which were distributed to the several women. [2]
*123 The venture was a joint undertaking by A. I. Kaplan and the Partnership for the importation and sale of sugar syrup to be sold and used in this country ration-free at a time when sugar was rationed. Because of the likelihood of prospective consumer demand for unrationed sugar syrup the parties to the joint venture hoped for sizeable profits. On February 4, 1944, the Office of Price Administration specified the conditions under which imported sugar-containing products could be used ration-free. The products had to be in this country and in possession of, or in transit to, the user on May 1, 1944. The Partnership and Kaplan agreed on February 21, 1944, upon the terms of the joint venture to import sugar syrup from Cuba. On March 1, 1944, Kaplan and the Partnership contracted to buy 675,000 gallons of Cuban invert sugar syrup. On March 3, 1944, offers to share in the venture were tendered to the wives of three of the partners, the half sister of another partner, the wife of an employee, and also to another employee. These offers were accepted but nothing was paid for the interests received. The recipients of the interests did not advance cash or security, nor did they render services *124 to the venture. By the terms of the letter of offer, they undertook to share in the profits or losses of the undertaking according to their percentage interest. Profits were realized and distributed according to a later agreement. The petitioners contend that the share of profits distributed to the women are taxable to them because they participated in the speculative venture by assuming part of the risks of the undertaking. No claim is made that the wives or half sister became members of the Partnership. It is petitioners' position that the women committed themselves to the financial risks involved and that, by reason of this participation, they are taxable upon the share of profits distributed to them. Respondent denies that the women were participants in the joint venture and for that reason allocates the profits to the petitioners. On the facts here present and under well established law, the transactions by which the petitioners sought to minimize their business losses by assigning a share of the profits to the several women were wholly ineffective to divert taxability of the profits from those who earned the income. Under , and , *125 petitioners are taxable on all of the profits. Cf. . In no sense can it be said that the women earned the income in question. They paid nothing, contributed nothing, earned nothing. They were merely the passive recipients of a share of the profits earned by the real participants in the joint venture. See also . Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Ruth W. Dyer, Docket No. 33180; Benjamin W. Dyer, Jr., Docket No. 33181; Daniel L. Dyer, Docket No. 33182; Leonard Francis Daidone, Docket No. 33183; and William Harry Vanderveer, Docket No. 33184.↩
1. Proceedings of the following petitioners are consolidated herewith: Ruth W. Dyer, Docket No. 33180; Benjamin W. Dyer, Jr., Docket No. 33181; Daniel L. Dyer, Docket No. 33182; Leonard Francis Daidone, Docket No. 33183; and William Harry Vanderveer, Docket No. 33184.↩
2. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentalty of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transacti n of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * SEC. 181. PARTNERSHIP NOT TAXABLE. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - (a) As part of his gains and losses from sales or exchanges of capital assets held for not more than 6 months, his distributive share of the gains and losses of the partnership from sales or exchanges of capital assets held for not more than 6 months. (b) As part of his gains and losses from sales or exchanges of capital assets held for more than 6 months, his distributive share of the gains and losses of the partnership from sales or exchanges of capital assets held for more than 6 months. (c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183 (b).↩